IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** : | |
| : | |
| v. : | Case No. 1:22-cr-0096-CKK-04 |
| : | |
| **PAULETTE HARLOW,** : | |
| **Defendant.** : | |

**PAULETTE HARLOW'S SUPPLEMENTAL
MOTION FOR JUDGMENT OF ACQUITTAL
ON BOTH COUNTS OF THE INDICTMENT**

COMES NOW PAULETTE HARLOW, by and through counsel, and hereby supplements her oral motion for judgement of acquittal (Fed. R. Crim. Proc. 29(b)), as to both Counts of the Indictment, made at the close of the government's case and renewed at the close of the presentation of the defendant's case. [1]

In support thereof, the following is stated:

**I.    PROCEDURAL HISTORY**

Paulette Harlow is charged in a two-count Superseding Indictment with Conspiracy Against Rights, in violation of 18 U.S.C. § 241, and Count Two, Clinic Access Obstruction, in violation of 18 U.S.C. §§ 248(a)(1), 2, known as the Freedom of Access to Clinic Entrances Act, or "Face Act." A bench trial commenced on October 23, 2023. Counsel for Mrs. Harlow orally moved for judgement of acquittal "MJOA") at the conclusion of the government's case in chief. The Court reserved judgment on the motion and allowed the case to proceed. At the close of the

---

[1] The government did not present a rebuttal case.

1

government's case on October 26, 2023, counsel renewed Mrs. Harlow's MJOA. The Court reserved making a decision, giving counsel the opportunity to further brief the Rule 29(b) motion if necessary. At this time, the Court has not issued it's verdicts as to Mrs. Harlow.

## II.    RELEVANT FACTS [2]

At trial, there was testimony (and videos) that Mrs. Harlow, along with a group of at least eight other individuals, entered the Washington Surgi Clinic, in Washington D.C., on October 22, 2020. The Surgi Clinic provides reproductive health services to women, including but not limited to abortions. Video evidence at trial showed Mrs. Harlow enter the waiting room area of the clinic after some individuals had already entered the clinic. Employees of the Surgi Clinic attempted to block certain individuals from entering the clinic, and at least two of the employees used physical force to remove certain persons from the waiting room area of the clinic. Mrs. Harlow was violently pushed by an employee as she entered the waiting room area. Mrs. Harlow did not intentionally push back, before she uncontrollably fell into to an employee. She fell to the floor and then rolled over to her side. Mrs. Harlow managed to crawl on the floor and eventually sit in a chair in the waiting room. She remained peaceful throughout the event at the Surgi Clinic and she did not make any threats to anyone. Prior to entry into the waiting room,

---

[2]    References to trial testimony are being made without benefit of reviewing trial transcripts. (which have been ordered)

co-defendant Joan Bell secured a bicycle lock around Mrs. Harlow's neck, and she did so without informing Mrs. Harlow in advance of this act and without Mrs. Harlow's permission.

Thereafter, chains were placed on and through her neck area, as well as other parts of her body, when she was on the floor of the reception area and/or while she sat in a chair. Officers from the Metropolitan Police Department arrived and they cut-off the bicycle lock and removed the chains from Mrs. Harlow. She was arrested and was taken out of the Surgi Clinic by wheelchair.

Mrs. Harlow did not participate in any planning meetings or other communication about the October 22, 2020 protest, other than to communicate about her travel plans from Kingston, MA to Washington, D.C.

There was ample testimony from government witness (and case agent) Michael Biscardi that co-defendants Jonathan Darnel and Lauren Handy were the organizers and leaders of the subject events leading up to and on October 22, 2020.

### III.   LEGAL STANDARD

In *United States v. Quinn*, 403 F. Supp. 2d 57, (D.D.C. 2005), the Court explained that "in considering a Rule 29 motion, the Court must view the evidence in the light most favorable to the government and must determine whether the evidence at trial is sufficient to sustain a conviction as a matter of law; in other words, the Court must decide whether a reasonable jury could conclude that the government met its burden of proving each element of the offense beyond a

reasonable doubt." In *United States v. Hite*, 950 F. Supp. 2d 155 (D.D.C. 2013), this Court further explained that "if the court reserves decision, it must decide the motion on the basis of the evidence at the time the ruling was reserved."

## IV. ARGUMENT

### A. The Evidence Was Insufficient as to Count One.

Count One of the Indictment charges a violation of 18 U.S.C. § 241, Conspiracy Against Rights. The three elements of the crime here are: (1) That two or more persons reached an agreement or came to an understanding to injure, oppress, threaten, or intimidate someone in the free exercise of the right to access reproductive health services;( 2) That defendant voluntarily and intentionally joined in the agreement or understanding; and (3) That defendant intended to hinder, interfere with, or prevent the patients and/or employees of the Washington Surgi-Clinic in their right of access.

Although the evidence established that Mrs. Harlow was physically present at the Washington Surgi Center, it did not establish that she *conspired* with others, including her co-defendants, to deny access to reproductive health care, including abortions. The government established that a group of other co-defendants – not Mrs. Harlow – communicated in the days and weeks prior to coming to Washington, D.C. and entering the Washington Surgi Clinic. Electronic messages, text messages and communication through applications such as Facebook demonstrated that at least some of the cooperators intended to blockade the

Washington Surgi Clinic in October, 2020 to protest the abortion services being provided there. However, the government failed to draw any connection between any other alleged co-conspirator and Mrs. Harlow, except with her sister, Jean Marshall and Joan Bell. Although there were communications about travel plans, the government did not present any evidence that Mrs. Harlow communicated with any of the other co-defendants or anyone else about entering into the Washington Surgi Clinic in October 2020.

Co-defendant Jean Marshall testified at trial that she, along with Mrs. Harlow, co-defendants Joan Bell and William Goodman, arrived "late" to a Pastor's home in Washington, D.C., on the evening of October 21, 2020. Mrs. Marshall described that they "missed" some sort of meeting, and that she and Mrs. Harlow did not participate in the evening's meeting. And, likewise, co-defendant Joan Bell testified at trial to, essentially, the same as did Jean Marshall concerning the events of October 21, 2020. However, Mrs. Bell testified that she , alone, decided to bring the blue bag containing two bicycle locks and chains. Even though they rode together in the same car from Mrs. Bell's home in New Jersey to Washington, D.C., Mrs. Bell testified that she did not disclose the existence of the two bicycle locks and chains to anyone else in the car – including Mrs. Harlow. And when they arrived at the Pastor's home late on the evening of October 21, 202, she did not disclose the existence of the two bicycle locks and chains to anyone else. Mrs. Bell told the Court that it was only when they were in the 4th floor hallway outside of the Surgi Clinic

that she placed the bicycle lock on Mrs. Harlow's neck – and without first obtaining her permission to do so.

When Mrs. Harlow testified she confirmed the above-noted testimony of Mrs. Marshall and Mrs. Bell. She also testified that she new none of the details about the meeting at the home in Washington D.C. on October 21, 2020, other than she expected food to be available when they arrived. She told the Court that she did not know, ahead of time, that there would be some sort of planning meeting at that home, and that she did not know the other people who were already at home when she arrived. (Other than Joan Bell, Jean Marshall & William Goodman) The next morning there was a gathering outside a coffee shop near the Surgi Clinic. She did not participate in any planning for the protest nor did she decide that she was willing to be arrested. While near the coffee shop, she did not see a blue bag which may have contained bicycle locks and chains.

Caroline Davis, an unindicted co-conspirator and cooperating witness for the government, testified that she traveled with other co-conspirators from Michigan to attend a social gathering at a Pastor's home in Washington, D.C., on the evening of October 21, 2020. Ms. Davis testified that several other co-defendants were present at the gathering, and that some of the defendants discussed their plan to enter the Washington Surgi Clinic the next day. However, Ms. Davis testified that Mrs. Harlow was present at that gathering, but was not clear in her testimony as to whether or not Mrs. Harlow participated in that meeting. In other words, the

government did not produce any evidence that Mrs. Harlow attended the "meeting" part of the gathering or had any knowledge of what was allegedly discussed or planned before or after the gathering. Ms. Davis went on to testify that she saw Mrs. Harlow on the morning of October 22, 2020, but that she had no discussions with her, nor did she see Mrs. Harlow look directly into a blue bag which was on the sidewalk/plaza area outside of the coffee shop.

Even in the light most favorable to the government, the government did not present sufficient evidence to find Mrs. Harlow guilty of Conspiracy to Deprive Rights. Mrs. Harlow's presence at either the social gathering the night before or outside the coffee shop clinic or inside the Surgi Clinic building is insufficient to prove her involvement in the conspiracy. This argument must fail because the government failed to produce any evidence that Mrs. Harlow conspired with another person to commit a crime. Put another way, a person can commit a crime, without conspiring to commit a crime. Moreover, Mrs. Harlow's mere presence at the scene of an alleged crime, is insufficient to prove her guilt. Although Mrs. Harlow entered the clinic, the government failed to prove that she conspired with another person(s) to injure, oppress, threaten, or intimidate any other person inside. Mrs. Harlow's entry into the Surgi Clinic alone, is not sufficient proof beyond a reasonable doubt, even in the light most favorable to the government, that he entered a criminal conspiracy.

### B. The Evidence was Insufficient as to Count Two.

Count Two of the Indictment charges a violation of 18 U.S.C. § 248(a)(1), the Freedom of Access to Clinic Entrances Act. ("FACE") As applied here, the elements of an offense are: (1) A defendant used force or physical obstruction; (2) A defendant intentionally injured, intimidated, or interfered with Ashley Jones or the employees of the Washington Surgi-Clinic, or attempted to do so; and (3) A defendant did so because Ashley Jones was obtaining, or the clinic was providing, reproductive health services.

#### 1. The Evidence is Insufficient that Mrs. Harlow Intentionally Used Force.

There is no real dispute that Mrs. Harlow did not use force. The evidence plainly showed that Mrs. Harlow did not intentionally or personally use force, rather Mrs. Harlow was violently pushed by an employee (and/or others) as she entered the waiting room area. Mrs Harlow did not intentionally push back, before she fell into to an employee. As the Indictment itself alleges, the only real allegation of the use of force was when Jay Smith "forcefully" backed into the clinic, allegedly causing "Nurse K" to stumble and sprain her ankle. Indictment, Doc. 1, ¶ 19.

Moreover, the intent requirement under FACE is quite specific: not only must a defendant intend to injure, intimidate or interfere with another, but the defendant must act "*because* the interfered-with person was seeking, obtaining, or providing, . . . reproductive health services." *Sharpe v. Conole*, 386 F.3d 482, 484 (2d

Cir. 2004) (emphasis in original) (upholding summary judgment against the plaintiff because he failed to allege this second intent element); *accord*, *New York by Underwood v. Griepp*, No. 17-CV-3706 (CBA), 2018 WL 3518527, at *32 (E.D.N.Y. July 20, 2018), aff'd in part, vacated in part, remanded sub nom. *New York v. Griepp*, 991 F.3d 81 (2d Cir. 2021), reh'g granted and opinion vacated sub nom. *People v. Griepp*, 997 F.3d 1258 (2d Cir. 2021), and on reh'g sub nom. *New York by James v. Griepp*, 11 F.4th 174 (2d Cir. 2021), and aff'd and remanded sub nom. *New York by James v. Griepp*, 11 F.4th 174 (2d Cir. 2021).

In *New York ex rel. Spitzer v. Cain*, 418 F. Supp. 2d 457, 474 (S.D.N.Y. 2006), although the court found some contact between the defendants and "escorts" at the clinic to have been intentional because the escorts were assisting in providing reproductive health services, it declined to find other, incidental, contact in violation of FACE because it lacked this second intent element. This contact that did not violate FACE occurred because the defendants and the escorts followed clinic clients in close proximity, resulting in occasional "unwanted physical contact." *Id*. The court stated: "while such contact may be inappropriate, *it is not illegal under FACE if it is not motivated by an intent to restrict freedom of movement or place another in reasonable apprehension of bodily harm*. The plaintiffs have not shown that each instance where a defendant bumps into a patient or escort is motivated by this intent." *Id*. (emphasis added).

The *Cain* court also refused to find a FACE violation against another defendant even though the evidence clearly showed he had assaulted escorts and a passerby. *Id*. Nonetheless, the defendant did not assault these individuals because they were providing reproductive health services, but rather because they had interfered with his property. *Id*. To like effect was the district court's finding in *Griepp*: although some contact undoubtedly occurred with respect to one defendant when an escort "tried to block her access to the patient," the court found that the defendant had not acted with the intent to injure, intimidate, or interfere. *Griepp, supra*, 2018 WL 3518527, at *33.

The same analysis applies here. Even assuming *arguendo* that the court could find that Mrs. Harlow and/or her co-defendants were somehow implicated in the clinic employee's injury, there is no evidence that the alleged use of force was applied against the clinic employees *because* they were providing reproductive health services. Any incidental contact with clinic employees was not undertaken with the intent to injure, intimidate, or interfere with them, nor was it done because they provided reproductive health services. Like the situations in *Cain* and *Griepp*, the contact occurred only because the clinic employees tried to block Defendants' entry into the facility. Mrs. Harlow's commitment to nonviolence was reiterated time and again. By contrast, the clinic employees' actions were plainly aggressive and forceful; it was the clinic employees, not Defendants, who initiated

contact. Indeed, the clinic manager assaulted Mrs Harlow (and others) with a broomstick. Under these circumstances there is no evidence upon which a reasonable mind might fairly conclude beyond a reasonable doubt that Mrs. Harlow, and/or ger co-defendants, intentionally used force to injure, intimidate, or interfere with clinic employees or patients.

    2.    **The Evidence is Insufficient that Mrs. Harlow Can Be Found Guilty Regarding Use of Force by Aiding and Abetting.**

Nor can the Mrs. Harlow be found guilty on the basis of aiding and abetting. In *Rosemond v. United States*, 572 U.S. 65 (2014), the Supreme Court held that under 18 U.S.C. § 2, the aiding and abetting statute, "'those who provide knowing aid to persons committing federal crimes, *with the intent to facilitate the crime*, are themselves committing a crime.'" *Id*. at 71 (quoting *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N. A.*, 511 U.S. 164, 181 (1994)). The Court went on to counsel: "As at common law, a person is liable under § 2 for aiding and abetting a crime if (and only if) he (1) takes an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission." *Id*. (citing 2 W. LaFave, Substantive Criminal Law § 13.2, p. 337 (2003) (an accomplice is liable as a principal when he gives "assistance or encouragement ... with the intent thereby to promote or facilitate commission of the crime"); and *Hicks v. United States*, 150 U.S. 442, 449 (1893) (an accomplice is liable when his acts of assistance are done "with the intention of encouraging and abetting" the crime)).

11

Critically, the Court said: "An intent to advance some different or lesser offense is not, or at least not usually, sufficient: Instead, *the intent must go to the specific and entire crime charged.*" *Id*. at 76 (emphasis added). Mrs. Harlow suggests this standard should also apply to co-conspirator liability. Accordingly, even if the evidence was such that the jury could have found beyond a reasonable doubt that Mrs. Harlow and these co-defendants conspired to physically obstruct the clinic. And, if co-defendant Jay Smith intended to use force to intentionally injure an employee, no reasonable juror could find beyond a reasonable doubt that Mrs. Harlow specifically intended to assist Jay Smith's use of force. Therefore, Mrs. Harlow's motion should be granted as to the use of force.

### 3. The Evidence is Insufficient as to Obstruction.

There was insufficient evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt as to Mrs. Harlow with respect to physical obstruction, as well. The evidence regarding Mrs. Harlow was insufficient because she was never clearly shown to have been in front of the employees' entrance and obstructing access to the waiting room. Mrs. Harlow did not physically obstruct (and the chair with the rope on it at the lobby entrance did not render passage impassable or unreasonably difficult). As for Mrs. Harlow, while she may have obstructed a door as she was sitting in a chair in the waiting room, her intent was to counsel women and to participate in a prayer group, and therefore she cannot be guilty of obstruction.

WHEREFORE, for the foregoing reasons and such other reasons which may appear just and proper, defendant Paulette Harlow requests the entry of an order granting her motion for judgement of acquittal, (Fed. R. Crim. Proc. 29(b)), as to both Counts of the Indictment made during the trial of this matter.

Respectfully Submitted,

_____
Allen H. Orenberg, # 395519
The Orenberg Law Firm, P.C.
12505 Park Potomac Avenue, 6th Floor
Potomac, Maryland 20854
Tel. No. 301-984-8005
Cell Phone No. 301-807-3847
Fax No. 301-984-8008
aorenberg@orenberglaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2023, copies of the foregoing Paulette Harlow's Supplemental Motion for Judgment of Acquittal On Both Counts of the Indictment, were served to case registered parties by CM/ECF,

_____
Allen H. Orenberg

13