**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | **:** | |
| | **:** | |
| **v.** | **:** | **Case No. 1:22-cr-0096-CKK-04** |
| | **:** | |
| **PAULETTE HARLOW,** | **:** | |
| **Defendant.** | **:** | |

## DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

COMES NOW ATTORNEY, Allen H. Orenberg, to respectfully submit this Memorandum in Aid of Sentencing on behalf of Defendant Paulette Harlow. There can be no dispute that the Court has a duty to deliver a sentence that is not greater than necessary to comply with sentencing purposes. *See* 18 U.S.C. §3553(a).

When fashioning an appropriate sentence, Mrs. Harlow requests the Court to impose a sentence which properly reflects the 18 U.S.C. §3553(a)(1-7) factors, and which takes into consideration a downward variance based on her health status and her age. (USSG §§ 5H1.1 & 5H1.4.) As more fully described herein, Mrs. Harlow is fundamentally a good person with an excellent reputation. Mrs. Harlow, her family, and her supporters firmly believe she poses no risk of repeating illegal behavior. Consequently, it is unnecessary to protect the community from Mrs. Harlow in the future by way of BOP imprisonment.

Respectfully, Mrs. Harlow asks the Court to impose a sentence of, essentially, home incarceration with a period of supervised release, with privileges to leave her home for medical appointments and to attend daily/weekly church services.

## I.    Case Background

Mrs. Harlow, along with several others,[1] was charged in a two-count superseding indictment with violating 18 U.S.C. § 241 (conspiracy against rights) and 18 U.S.C. § 248(a)(1) (FACE Act). [ECF 113] Following a bench trial, the Court on November 16, 2023, rendered a verdict of guilty as to both counts 1 & 2 of the superseding indictment. [ECF 476]

A sentencing hearing is scheduled May 17, 2024, at 1:30 p.m.

Although the U.S. Probation Office opines that a guideline sentence is 33-41 months' imprisonment (total offense level 20, criminal history category 1) they are recommending a variant sentence of 24 months imprisonment on count 1, and 12 months on count 2, to run concurrently, followed by a 3 year term of supervised release, and a fine of $1,500.00. [ECF 526] In the Presentence Report (PSR) a downward variance is suggested because of her age, medical conditions, and sentencing disparities. PSR at ¶ 171.

The government is recommending a sentence at the low end of the recommended Sentencing Guidelines range of 33-41 months' imprisonment. *See Government's Sentencing Memorandum* [ECF 540] at page 2, 20.

Mrs. Harlow and counsel have reviewed the (draft & final) PSR. On March 18, 2024, counsel filed the Obligation & Response to Presentence Report Form (draft version) with a comprehensive letter to USPO Sherry Baker. [ECF 507]

---

[1] The Court on September 1, 2023, severed Mrs. Harlow from co-defendants Lauren Handy, Jonathan Darnel, Jay Smith, Jean Marshall, John Hinshaw, Heather Idoni, Joan Bell & Herb Geraghty. [Minute Order]

## II.      Objections to the Presentence Report

The following are the unresolved objections to the PSR:

### A.      Para. Nos. 43, 79, 80 & 86 – Victim Related Adjustment

In the PSR, the Probation Officer contends that Shampy Holler, an unnamed victim to the Indictment, was physically restrained during the offense by being forced to lay on the floor due because co-defendants would not allow her into the clinic. It is the Probation Officer's position that a 2-level upward adjustment is warranted, pursuant to USSG §3A1.3.

USSG §3A1.3 states that if a victim was physically restrained in the course of the offense, increase by 2 levels. USSG §3A1.3, Application Note # 1 directs that the definition of "physically restrained: is defined in the Commentary to USSG §1B1.1. Pursuant to USSG §1B1.1, Application Note # 1(L), "physically restrained" means the forcible restraint of the victim such as by being tied, bound, or locked up.

There is no evidence Shampy Holler, or any other victim, was physically restrained. Due to experiencing labor pain and in need of immediate medical attention, Ms. Holler chose to lay on the hallway floor outside the clinic after being denied entry by Mrs. Harlow's co-defendants. When Ms. Holler tried to get up from the floor, co-defendant Marshall pushed her back down to prevent her from entering the facility as clinic staff attempted to allow her access. -The conduct of co-defendant Marshall does not equate to the sentencing guidelines definition for "physically restrained," and the 2-level upward adjustment applied by the Probation Officer for this specific offense characteristic is not warranted.

Furthermore, Mrs. Harlow does not believe that a person being pregnant makes them a "vulnerable victim." These enhancements are not warranted.

### B.      Para. No. 70 – Adjustment for Obstruction of Justice

Mrs. Harlow denies she testified falsely at trial, and that she did not attempt to obstruct justice. She did not attempt to willfully obstruct or impede the administration of justice, pursuant to USSG 3C1.1. Mrs. Harlow was exercising her constitutional right to explain to the Court her personal conduct and actions. Thus, she should not receive a 2-level upward adjustment for Obstruction or Impeding the Administration of Justice, pursuant to USSG §3C1.1. The Court (as the fact-finder at trial) is in the best position to assess the credibility of Mrs. Harlow and make this determination.

However, while the United States Supreme Court has recognized that a trial court is within its discretion to enhance a defendant's sentence under USSG § 3C1.1 when a defendant testifies and is nevertheless convicted, the Court was careful to note that such an enhancement is only appropriate when there is false testimony given with a "willful intent to provide false testimony." *United States v. Dunnigan*, 507 U.S. 87, 94–95, 113 S. Ct. 1111, 122 L. Ed. 2d 445 (1993). As the Court recognized, "not every accused who testifies at trial and is convicted will incur an enhanced sentence under § 3C1.1 for committing perjury." *Id.* at 95. As the Court explained, "an accused may give inaccurate testimony due to confusion, mistake, or faulty memory." *Id.* The comments to the Guideline itself also recognize this. *See* USSG § 3C1.1, cmt. 2 ("In applying this provision in respect to alleged false testimony or statements by the defendant, the court should be cognizant that inaccurate testimony or statements

sometimes may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct jus-tice.").

Further, "willfully requires that the defendant consciously sct with the purpose of obstructing justice," *United States v. Thompson,* 962 F. 2d 1069, 1071 (D.C. Cir. 1992)(quoting *United States v. Lofton*, 905 F.2d 1315, 1317 (9th Cir. 1990)) And, when considering an obstruction enhancement, "[a] defendant's testimony and statements should be evaluated in the light most favorable to the defendant." *Id.* (Quoting Application Note 1 for USSG § 3C1.1). The Second Circuit put it another way, finding that the Application Note in question "instructs the sentencing judge to resolve in favor of the defendant those conflicts about which the judge, after weighing the evidence, has no firm conviction." *United States v. Onumonu,* 999 F.2d 43, 45 (2nd Cir. 1993).

The United States Court of Appeals for the D.C. Circuit has previous applied an enhanced standard for evaluating the application of the enhancement, one which requires clear and convincing evidence of a perjury on the part of the defendant. *United States v. Montague*, 40 F.3d 1251, 1256 (D.C. Cir. 1994). The court further mandated "cases that cause a district court pause require separate and clear findings and careful attention to the evaluating standard in supporting the determination." *Id.*; *see also Dunnigan*, 507 U.S. at 97 ("the trial court must make findings to support all the elements of a perjury violation in the specific case."). Although this holding has not been expressly overruled, the court in a subsequent opinion, noted in a footnote

that effective November 1, 1997, the Sentencing Commission deleted language from the commentary to § 3C1.1 so that the Application Note "no longer suggests the use of a heightened standard of proof." *United States v. Dozier*, 162 F.3d 120, 124 n.1 (D.C. Cir. 1998) (quoting U.S.S.G. App. C, amend. 566 (Nov. 1997)).

Nothing in Mrs. Harlow's testimony, especially when taken in the light most favorable to her, establishes that she willfully tperjury to obstruct justice. Testimony is not automatically deemed untruthful by virtue of a guilty verdict and, accordingly, Mrs. Harlow should not be assigned a 2-level upward adjustment for Obstruction or Impeding the Administration of Justice, pursuant to USSG §3C1.1.

**C.      Para. Nos. 90-93 – Multi-Count Adjustment**

Mrs. Harlow objects to the Multi Count Adjustment. It is believed that this is a case of first impression as far as charging these two offenses together. USSG §2H1.1 (a)(1) applies to both counts, nevertheless they should not group per USSG §2D1.2 (d).

However, Count Two has a statutory maximum of 1 year, her Base Offense Level for this count is 16. This results in a guideline range of 21-27 months, which is approximately twice the amount of the statutory maximum. Mrs. Harlow objects to the double counting for the conspiracy (Count 1) and the goal of the conspiracy (Count 2). She also objects to the skewed result that results from scoring these offenses as done in the PSR, resulting in two points being added to her calculation. (¶ 92) In the event this argument fails, she will be asking for a variance to account for this skewed result.

### III.    Framework And The Guidelines Are Not Mandatory

The Court has broad discretion to consider nearly every aspect of a particular case, and a particular defendant, in fashioning an appropriate sentence. In early 2005, the United States Supreme Court declared that the Guidelines are advisory, rather than mandatory. *United States v. Booker* 543 U.S.220, 125 S.Ct. 738, 160 L. Ed 2d 621 (2005). Although the Court must consider the Guidelines in imposing a reasonable sentence, the Guidelines are now merely "advisory," constituting just one factor to be considered on equal footing with the other sentencing factors found in 18 U.S.C. §3553 (a). *See id.* at 757,764 – 67, 790.

The *Booker* Court also re-emphasized that the primary sentencing mandate of §3553 (a) is that courts must impose the least amount of imprisonment and sentence necessary to achieve the statutory purposes of punishment-justice, deterrence, incapacitation, and rehabilitation; the court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in (18 U.S.C. §3553(a)(2). 18 U.S.C. §3553(a).[2]  This represents a cap above which the Court is *statutorily prohibited* from sentencing - even when a far greater sentence is

---

[2]

18 U.S.C. §3553 (a) states, in pertinent part, "The court shall impose a sentence sufficient, but not greater than necessary, to comply with purposes set forth in paragraph (2) of this subsection.  The court, in determining the particular sentence to be imposed, shall consider – (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."Furthermore, paragraph (3) of this subsection directs the Court to consider "the kinds of sentences available."

recommended by the advisory sentencing guidelines. *See, United States v. Denarli*, 892 F.2d 2698, 276-77 (3rd Cir. 1989) (Becker, J., concurring in part, dissenting in part).

In *Kimbrough v. United States*, 552 U.S. 85, 128 S.Ct. 558 (2007), and *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court held that the sentencing guidelines are simply an advisory tool to be considered alongside other statutory considerations set forth in 18 U.S.C. §3553 (a). In two more recent summary reversals, the Court further made clear that the Guidelines cannot be used as a substitute for a sentencing court's independent determination of a just sentence based upon consideration of the statutory sentencing factors. *Nelson v. United States*, 129 S. Ct. 890 (2009), 2009 WL 160585 (Jan. 26, 2009); *Spears v. United States*, 129 S. Ct. 840 (2009). Rather, the court must weigh each of the factors and impose a sentence that constitutes the least amount of imprisonment necessary pursuant to Section 3553(a). Moreover, as the Supreme Court reiterated, in imposing sentence, "the punishment should fit the offender and not merely the crime." *Pepper v. United States*, 131 S.Ct. 1229, 1240 (Mar. 2, 2011).

## IV.     Nature and Circumstances of the Offense
##         and History and Characteristics of Mrs. Harlow

### A.     The Nature and Circumstances of the Offense

Mrs. Harlow was convicted by the Court of violating 18 U.S.C. § 241 (conspiracy against rights) and 18 U.S.C. § 248(a)(1). (FACE Act) Admittedly, she has been a pro-life advocate for the past 40+ years. As a Roman Catholic, she is a member of the Franciscan Order, Gloria Dei, the Legend of Mary, the Pias Society of St. Joseph and

the Pioneer Total Abstinence Association of Sacred Heart – all groups support peaceful pro-life activities.

In a recent oral argument before the D.C. Circuit, Judge Pillard eloquently stated that "the power of civil disobedience" was the willingness to be punished. Such protesters think, "I'm violating the law and I'm ready to take the consequences for it because I'm responding to a higher law," she said. "And the higher law, in my view, is more important, even to the point where I'm willing to sacrifice myself. But … the sacrifice is that the law does not bend and accommodate the person's individual moral principle." *U.S. v. Brock*, 94 F.4th 39 (D.C. Cir. 2024). Mrs. Harlow understands and subscribes to this message.

However, any *aggressive actions* taken by any of the participants involved in the offenses of conviction were well beyond the scope of Mrs. Harlow's agreement. She is a true pacifist. Her history speaks volumes to her pacifist approach to the pro-life movement. There was no evidence that she believed anything, but a peaceful red rose rescue was going to take place. She is a life-long ardent pacifist.

**B.    History and Characteristics of Mrs. Harlow**

The personal characteristics, including personal and family data, physical condition, mental and emotional health, substance abuse, education, employment and financial history of Mrs. Harlow also encourage the sentencing proposal herein. These factors are discussed more fully in the PSR, ¶¶104-130.

Mrs. Harlow's total criminal history score is zero and there are no other pending charges. She has no significant criminal history except for trespass charge some 34+ years ago. PSR, ¶¶ 98, 99, 101 & 102.

Mrs. Harlow was born on June 24, 1948, and she is currently 75 years old. Married for 32 years, she and her husband (John Harlow) have two biological children and four adopted children. She has two living sisters and one brother. (Her sister Jean Marshall is a co-defendant). Mrs. Harlow is very closed to all of her immediate family and maintains relationships with many of her extended family members. While on home detention for the past 8 months, her family members (and clergy) have regularly visited with her.

She has serious and ongoing medical ailments, which are more fully discussed in section VII (A), below. Her serious medical condition warrants a downward variance because of her health status and her age. (USSG §§ 5H1.1 & 5H1.4.)

According to the PSR, Mrs. Harlow has not demonstrated an inability to pay a fine (PSR, ¶137) and a $1,500.00 fine is recommended. *See Sentencing Recommendation, "Fine."* [ECF 526] However, it is counsel's understanding Mrs. Harlow is a retired nurse (and her husband is a retired schoolteacher) and that they live on a modest fixed income. Under this scenario, Mrs. Harlow asks the Court to waive any fine in her case.

Attached are letters from Ellen and Jack McDermott. Both give the Court a unique perspective as to the character and reputation of their friend, not withstanding her  conduct on October 22, 2020.

## V.      Respect for the Law and Deterrence

Mrs. Harlow exercised her Constitutional right to a trial. She appeared in a timely manner for all court proceedings, including the trial. Her personal history and characteristics as described throughout this memorandum, as well as noted in "support" letters, it is improbable that she will participate in disruptive pro-life protests, reprehensible or other criminal activities in the future. There are numerous reasons to be optimistic that Mrs. Harlow will not engage in further criminal behavior, including the support of her large family & friends, the fact that she is 75 years old (soon to be 76) and she is determined to be a peaceful, productive and responsible member of society. Any prison sentence would have no greater effect toward the goals of sentencing than a period of home incarceration as proposed herein.

## VI.     The Need to Avoid Unwarranted Sentencing Disparities, and Impose A Sentence That Reflects The Seriousness of the Offense

There is no dispute that Mrs. Harlow's criminal convictions are serious and will likely have irreparable unintended consequences. Any prison term would nonetheless be an inappropriate sentence for Mrs. Harlow. And, the Court should not impose a sentence which would result in an unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

## VII.    The Kinds of Sentences Available and the Defendant's Sentencing Proposal

According to the PSR, Mrs. Harlow faces a Sentencing Guidelines recommended term of imprisonment in the range of 33-41. (Total Offense Level 20, criminal history category I) And, Mrs. Harlow has herein challenged the PSR Guidelines range. Of

course, the Supreme Court has ruled that the punishment guidelines set out by the Commission are entirely advisory, so that range of punishment is simply one factor to be considered. Congressional enactment, as opposed to the administrative guidelines from the Sentencing Commission. Undersigned counsel is unaware of anything that might warrant a sentence greater than the most severe punishment advised by the advisory guidelines by the Sentencing Commission. This Court is required to consider other factors set out in 18 U.S.C. § 3553 (a). Of course, the Court need not march through a rote parroting of those factors, and counsel need not drag the Court through such a recitation. The purposes of sentencing include punishment, rehabilitation, general deterrence, specific deterrence and incapacitation.

A.     **A Downward Variance is Warranted Under**
       **USSG §§ 5H1.1 (Age) And/Or 5H1.4. (Physical Condition)**

The PSR specifically identifies Mrs. Harlow's age, health problems, and sentencing disparities as factors that may warrant a variance from the guideline range in his case. (PSR ¶171). As described-herein, the personal / medical history of Mrs. Harlow encourage the sentencing proposal consisting of home incarceration.

The Court previously reviewed Mrs. Harlow's medical records and it is submitted she has, and continues, to suffer from a myriad of serious health issues. And, during a hearing on September 1, 2023, Dr. Justin L. Massengale (Neurosurgeon) testified about her severe lumbar spinal stenosis, and the possible consequential impact of her sitting through a trial and as to her traveling to/from Kingston, MA to/from Washington, D.C.

Furthermore, during the return of verdict hearing on November 16, 2023, the

Court stated,

> " . . . having reviewed your medical records, it's clear that your
> suffering from a particularly severe medical condition for which
> you require more intensive treatment . . . I find that detention
> pending sentencing would [pose a grave danger to your health that
> I will release you pending sentencing on your same conditions."

(Trans. 11/16/2023, at pp. 3, 4 – attached)

It is counsel's understanding Mrs. Harlow continues to suffer from the same

serious medical conditions which were present pre-trial and during the trial. She

reports she is largely confined to her bed or couch, and that she is constantly in

elevated discomfort. She is wholly dependent on the regular care provided by her

husband and other family members. Mrs. Harlow indicates she has an appointment to

see Dr. Stephen C. Kaplan (her primary care physician) on April 29, 2024. Thereafter

counsel will submit any available updated medical records.

The following cases may be instructive when considering a downward variance

pursuant to Specific Offender Characteristics USSG §§ 5H1.1 (Age) [3] and 5H1.4.

(Physical Condition) [4]

---

[3]    USSG §5H1.1 - Age (including youth) may be relevant in determining whether a
departure is warranted, if considerations based on age, individually or in combination
with other offender characteristics, are present to an unusual degree and distinguish
the case from the typical cases covered by the guidelines. Age may be a reason to
depart downward in a case in which the defendant is elderly and infirm and where a
form of punishment such as home confinement might be equally efficient as and less
costly than incarceration.

[4]    USSG §5H1.4 - Physical condition or appearance, including physique, may be
relevant in determining whether a departure is warranted, if the condition or
appearance, individually or in combination with other offender characteristics, is

(continued...)

● *United States v. Dyce*, 91 F.3d 1462 (D.C. Cir. 1996). Court granted downward departure where woman suffered a stroke, required regular medical care and takes a number of prescription medications for high blood pressure, high blood sugar, as well as potassium for muscle contractions, and a magnesium enhancement drug for a shortage of magnesium. The court also considered her family, and that after recent deaths, if she was imprisoned she would lose custody as she is their only caretaker. Finally, court reasoned that defendant's complicated regime of medication and medical treatment, arising from severe stroke suffered after original sentencing, could be best managed under controlled conditions at home, and sentenced her to probation for five years.

● *United States v. Smith*, 27 F.3d 649, 652 (D.C. Cir. 1994) The court reasons that 5H1.1 and 5H1.4, suggest home detention as a substitute for imprisonment where, because of extreme age or disability, such detention would be as "efficient" as prison but less costly. In effect these policy statements identify extreme age and disability as characteristics that make it possible to achieve the goals of a prison sentence with an alternative confinement.

● *U.S. v. Ghannam*, 899 F.2d 327 (4th Cir. 1990) (an extraordinary physical impairment may be a reason to impose a sentence other than imprisonment)

And a survey of other Districts reveals that a downward variance for age & health reasons have been granted.

---

[4](...continued)
present to an unusual degree and distinguishes the case from the typical cases covered by the guidelines. An extraordinary physical impairment may be a reason to depart downward; e.g., in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment.

-14-

● *United States v. Willis*, 322 F. Supp. 2d 76, 85 (D. Mass. 2004)

A downward departure was warranted where a 69-year-old man, who had to take several medications to treat multiple, serious, and deteriorating medical problems. The court considered the number of doctors who indicated that he has serious and substantial health problems, which, combined with his age, would put him at risk were he to go to jail. As well as the cost of the care that BOP would incur to care for him. The court also considered that he was not likely to be a recidivist; incapacitation at his age, with these conditions, could be a death sentence.

● *United States v. Maltese*, Case No. 90 CR 87-19, 1993 U.S. Dist. LEXIS 8403, (N.D. Ill. June 18, 1993. The District Court granted downward departure because of the defendant's age and the fact that he is in extremely poor health. Maltese is 62 years old and has suffered from liver cancer and despite surgery and chemotherapy, and his prognosis was poor. Given that the defendant's prognosis is poor and that statistics suggest that most liver cancer patients do not live one year despite postoperative therapy, the court found that the defendant's illness presents the requisite extraordinary physical impairment supporting a grant of downward departure.

● *United States v. Watson*, 385 F. Supp. 2d 534, 537 (E.D. Pa. 2005)

Defendant's severe health problems stemming from HIV warranted a downward departure. At age 52, and being defendants twenty-ninth arrest and sixteenth conviction he had also been a drug addict since age seventeen, and he was

addicted to crack cocaine, with an expensive daily habit at the time he committed the bank robbery in this case. He also suffered from depression.

●    *United States v. Paradies*, 14 F. Supp. 2d 1315, 1322 (N.D. Ga. 1998) A downward departure was warranted where a 70 year old man suffering from depression, a treatable heart condition, prostate condition, osteoarthritis in knees, hands, spine and neck, and a torn rotator cuff in left shoulder. The court reasoned that based on his age and various infirmities, it is clear that a thirty-three month sentence is more onerous for this defendant than for most defendants, and granted downward departure.

Also, Mrs. Harlow is a retired hospice nurse. (PSR § 129) The Court may consider her hospice care employment as "public service." *See U.S. v. Carter,* 530 F.3d 565 (7th Cir. 2008) ("The guidelines are one factor among those listed in 18 U.S.C. § 3553(a), and regardless of whether courts have previously recognized public service as a ground for departure from the Guidelines**,** sentencing courts are charged with considering as part of the § 3553(a) factors "the history and characteristics of the defendant," which would include a defendant's public service. § 3553(a)(1)).

Because of her age and significant health issues, any BOP sentence may likely result in a rapid decline in her health status, even resulting in her death. Notwithstanding the perception noted in the PSR and by the government in its sentencing memo that the BOP may provide her adequate medical care, the reality is the BOP is no proper substitute for her current physicians who are familiar with her particular ailments and ongoing treatments.

### B.      Mrs. Harlow is Not Likely to Re-Offend

According to a report by the Department of Justice's Office of the Inspector General, inmates who are Mrs. Harlow's age are more expensive to incarcerate and are less likely to re-offend after release. U.S. Department of Justice, Office of the Inspector General, *The Impact of an Aging Inmate Population on the Federal Bureau of Prisons*, i-iii (Feb. 2016). [5]

According to the report, older inmates are dramatically less likely to re-offend than younger inmates; specifically, it found that 15% of older inmates are rearrested within three years of release, while 57% of young inmates(under age 25) are rearrested within three years of release. Id. at 38-40. Offenders who are in age bracket above that, 70-74 has a 0% re-offense rate. Id. The study supports sentencing Mrs. Harlow to a period of home incarceration based on her age.

The study also discusses the increased cost of housing older inmates because of their health problems. *The Impact of an Aging Inmate Population* at i-ii, 10-16.  This is a particularly relevant consideration in Mrs. Harlow's case because she has myriad of serious medical conditions.

The cost of incarcerating Mrs. Harlow would be grossly disproportionate considering the availability of alternative sentences that would be adequate to meet the §3553 sentencing goals. The study's evidence would support a sentence of probation, an alternative to incarceration, or home incarceration for Mrs. Harlow

---

[5]      **https://oig.justice.gov/reports/2015/e1505.pdf**

based on her age, health, and lack of a criminal history.

As to specific deterrence, Mrs. Harlow's likelihood of recidivism is low. She has zero criminal history and her proclivity to commit future crimes just does not exist. A punishment of any lengthy prison time in this case (as recommended in the PSR and by the government) would have the exact opposite effect from what is in the interest of justice. The alternatives to incarceration make financial sense, and would conserve resources for individuals from which society would need greater protection, and would serve the ends of justice.

## CONCLUSION

District Courts have been tasked with crafting sentences that best serve the interests of justice in each individual case. Considering the arguments set forth herein Mrs. Harlow respectfully asks this Court to use its discretion to fashion a sentence which takes into account the unique circumstances of age and her personal / medical history.

Mrs. Harlow submits a variant sentence below the guideline range is "sufficient, but not greater than necessary, to comply with" the purposes of punishment. A period of home incarceration, with privileges to go to medical appointments and to attend daily/weekly church services, are the realistic outer limits of punishment that may be "sufficient, but not greater than necessary." Any term of active incarceration may well result in an increased risk to her already precarious health status.

Furthermore, Mrs. Harlow should not be considered a future risk to the community, and she has been sufficiently deterred from committing future crimes. Mrs. Harlow is fundamentally a good person, and there is nothing to suggest that she will be anything other than that moving forward in her life. The sentence of home incarceration proposed herein will adequately protect the public from any (not likely) future crimes of Mrs. Harlow.

Mrs. Harlow is ready and willing to comply with all terms of any sentence imposed. She understands and recognizes that even the slightest violation of a sentencing condition may result in a lengthy period of federal imprisonment. Mrs. Harlow  recognizes that she will have to live for the rest of her life with the harsh consequences of these felony convictions. The potential loss of her liberty, including the devastating and irreparable consequences to her family, is more than enough incentive for her to respect and comply with all aspects of any sentence imposed. [6]

As presented herein, the 18 U.S.C. §3553 (a) sentencing factors, (a sentence should be "sufficient but not greater than necessary") to comply with sentencing goals, the Plea Agreement, including the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, as well as the concerns of the court and the community, will be satisfied by proposed sentence herein.

---

[6]   There is a remarkable cost savings to the taxpayers of the United States if the Court imposes a sentence of home incarceration. As noted in the PSR, (¶165) the monthly cost of imprisonment is $4,147.00, $3,266.00 for community confinement, and $366.00 monthly for supervision. And, if Mrs. Harlow is designated to a BOP medical facility, the yearly costs to BOP may be significantly higher.

Respectfully, for the foregoing reasons and such other reasons which may appear just and proper, Mrs. Harlow asks the Court to impose a variant sentence consisting of, essentially, home incarceration with a period of supervised release, with privileges to leave her home for medical appointments and to attend daily/weekly church services. Such a sentence does nothing to undermine the deterrent effect of sentencing. Neither does such a sentence undermine the statutory need for the Court to underscore, for Mrs. Harlow and for the community, the seriousness of the offense for which he is being sentenced. As proposed herein, the sentence appropriately provides just punishment and respect for the law, so that she may continue to be with her family, have regular access to her needed health care providers, and continue to live a law-biding life. To do otherwise would be manifestly unjust and a miscarriage of justice.

Finally, if a period of incarceration is imposed, Mrs. Harlow is asking the Court for the following recommendation:

1.     A judicial recommendation to the Federal Bureau of Prisons for a "Care Level 3" based on her medical history and current health status.

Respectfully submitted,

THE ORENBERG LAW FIRM, LLC

_____

Allen H. Orenberg, Bar No. 395519
200-A Monroe Street, Suite 233
Rockville, Maryland 20850
Telephone:   (301) 807-3847
Fax:            (240) 238-6701
aorenberg@orenberglaw.com
Counsel to Paulette Harlow

## CERTIFICATE OF SERVICE

I hereby certify that on April 19, 2024, I caused a copy of the foregoing

Defendant's Memorandum in Aid of Sentencing, with Exhibits, to be served by

CM/ECF to case registered parties, and by e-mail to USPO Sherry Baker.

_____

Allen H. Orenberg