**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| v. | : | **CRIMINAL NO. 22-CR-96 (CKK)** |
| | : | |
| **PAULA "PAULETTE" HARLOW,** | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

**GOVERNMENT'S REPLY TO DEFENDANT'S SENTENCING MEMORANDUM**

In her sentencing memorandum, ECF No. 554, the defendant, Paula "Paulette" Harlow ("Harlow"), makes clear yet again that she is unwilling and unable to accept responsibility for her actions during the clinic invasion on October 22, 2020—actions that deeply impacted clinic staff and patients. Just as she did when she perjured herself during her testimony before this Court, Harlow uses her sentencing memorandum to distort the facts, misrepresent her role, and downplay the significance of her crimes. Even so, Harlow requests this Court sentence her to a term of home confinement. For reasons previously briefed, *see* ECF No. 540, and discussed below, sentencing Harlow to term of home confinement is wholly insufficient and this Court should sentence Harlow to a term of incarceration at the low-end of Harlow's applicable Sentencing Guidelines range, which is 33-41 months at combined adjusted offense level 20 and criminal history category I.

**I.    THE PSR IS ACCURATE**

Harlow first takes issue with three findings in the PSR, including the findings that: 1) a sentencing enhancement for physical restraint is warranted; 2) the obstruction of justice

1

enhancement applies because Harlow falsely testified at trial; and 3) the multi-count adjustment applies to her sentencing guidelines. *See* ECF No. 554 at 3-6. Harlow's arguments do not withstand scrutiny—and yet again shirk responsibility—and this Court should accept the PSR's findings.

### A.  The Physical Restraint Enhancement Applies to Harlow

Harlow first argues that a victim related adjustment pursuant to U.S.S.G. §3A1.3 for physical restraint does not apply. In making this argument, Harlow absurdly asserts that Shampy Holler, a clinic patient experiencing severe labor pains, "**chose**" to lay on the floor. *Id.* at 3 (emphasis added). While Harlow admits that her sister and co-defendant, Jean Marshall ("Marshall"), "**pushed**" Ms. Holler back down to the floor "to prevent her from entering the facility as clinic staff attempted to allow her access[,]" Harlow claims she is not responsible for Marshall's conduct—conduct that even Harlow admits restrained Ms. Holler from entering the clinic. *Id.* (emphasis added). These arguments are incredulous given this Court's findings and well-settled legal precedent.

First and foremost, this Court has already found beyond a reasonable doubt that Harlow committed clinic access obstruction by both force and physical obstruction. *See* ECF No. 474 at 1. In fact, this Court recognized that Harlow "**purposefully** fell on top of the clinic manager, **forcefully shoving** the clinic manager into a waiting-room chair." ECF No. 474 at 6 (emphasis added).

Additionally, this Court found that Harlow and her co-defendants entered a conspiracy. *See generally* ECF No. 474 at 3-8. This Court further found that as part of the conspiratorial agreement, there was obstruction and violence. *See id.* at 5-8. In addition to the force and violence Harlow used to invade the clinic, this Court recognized that co-defendant Jay Smith ("Smith") "**fought**

**against** one nurse, **shoving** the door open and the nurse backwards, causing the nurse to severely sprain her ankle." *See id*. at 6 (emphasis added); *see also* Exhibit No. 1001.

Even if the evidence did not establish, and this Court did not find, that Harlow acted violently during the clinic invasion, the case law is clear: Harlow is substantively responsible for the violence of her co-conspirators.[1] *See Pinkerton v. United States*, 320 U.S. 640, 646-47 (1946); *United States v. Khatallah*, 41 F.4th 608 (D.C. Cir. 2022) ("[A] conspirator can be found guilty of a substantive offense based upon acts of his coconspirator so long as the act was done in furtherance of the conspiracy, was within the scope of the unlawful project, and could be reasonably foreseen as a necessary or natural consequence of the unlawful agreement."); *see also* U.S.S.G. § 1B1.3 (defining "Relevant Conduct" for sentencing purposes). Harlow knew that she and her co-defendants were going to be met with resistance, but they were prepared to "interven[e] with their bodies" and "bond[] together physically. . . ." *See* Exhibit 1017. The acts of violence— whether committed by Harlow or her co-defendants—were reasonably foreseeable and a natural consequence of the conspiracy Harlow willingly joined by traveling from Massachusetts to Washington, D.C. with Marshall and picking up two co-defendants along the way. *United States v. Ballestas*, 795 F.3d 138, 146 (D.C. Cir. 2015) ("[A]s long as a substantive offense was done in furtherance of the conspiracy, and was reasonably foreseeable as a 'necessary or natural consequence of the unlawful agreement,' then a conspirator will be held vicariously liable for the offense committed by his or her coconspirators.") (*citing United States v. Washington*, 106 F.3d

---

[1]     And even Harlow recognizes the force and violence Marshall used to prevent Ms. Holler from accessing the reproductive health care she needed. *See* ECF No. 554 at 3. (Noting that Marshall "**pushed**" Ms. Holler back down to the floor "to prevent her from entering the facility as clinic staff attempted to allow her access.") (emphasis added).

983, 1012 (D.C.Cir.1997)).

This Court found beyond a reasonable doubt that Harlow committed clinic access obstruction by both force and physical obstruction. *See* ECF No. 474 at 1. As part of that physical obstruction, clinic patients and staff were barricaded behind closed doors—Harlow and Joan Bell chained themselves together, and along with John Hinshaw and Marshall, sat in chairs and refused to move, and Heather Idoni and Will Goodman locked their arms and stood in front of the employee entrance door. In addition to Marshall and the other co-defendants restraining Ms. Holler in the hallway and preventing her from accessing the care she needed, Harlow and her co-defendants prevented clinic employee Sarah Compton from leaving, delaying treatment for her badly sprained ankle.[2] *See* 09/09/2023 Trial Tr. at 102: 5-6 (Sarah Compton testifying, "I couldn't leave to go to the hospital until they were gone"); *see also Arcoren v. United States*, 929 F.2d 1235, 1246 (8th Cir. 1991) (finding no error in physical restraint enhancement where defendant confined victims to a room), *United States v. Stokley*, 881 F.2d 114, 116 (4th Cir.1989). (finding no error in applying physical restraint enhancement, noting "a victim need not be tied or bound up so that his movement is completely restricted. . ."). As such, the physical restraint enhancement applies and Harlow's combined adjusted offense level of 20 is accurate.

### B. The Obstruction of Adjustment Enhancement Applies to Harlow

Next, Harlow asserts that the obstruction of justice adjustment does not apply to her and denies that she lied during her testimony before this Court. *See* ECF No. 559 at 4-6. Harlow claims

---

[2]   Importantly, not only is Harlow substantively responsible for these actions pursuant to well-settled legal precedent, but the conduct of Harlow's co-defendants is also relevant pursuant to U.S.S.G § 1B1.3 (a)(1) (Relevant Conduct).

that she "was exercising her constitutional right to explain to the Court her personal conduct and actions." *Id.* at 4. Unfortunately for Harlow, her constitutional right does not extend to lying to this Court while under oath. As this Court previously found, Harlow's testimony concerning the blockade was "utterly belied by video evidence."  ECF No. 474 at 8. For example, Harlow testified that she did not enter the clinic with a bike lock, *see* 10/26/2023 Trial Tr. at 143:21-151:5, despite clear evidence to the contrary, *see* Exhibit No. 1079A.  As another example, Harlow refused to acknowledge she was responsible for carrying the bag of locks into the clinic, *see* 10/26/2023 Trial Tr. at 154:14-156:3, even when confronted with indisputable video evidence, *see* Exhibit No. 1001. This Court found Harlow's "self-serving testimony" incredible, and it was, given the copious amounts of evidence that Harlow ignored and continues to ignore. ECF No. 474 at 8. The obstruction of justice enhancement applies and Harlow's combined adjusted offense level of 20 is accurate.

### C.    The Sentencing Guidelines are Calculated Correctly

Finally, Harlow asserts that the PSR is incorrect because it applies a multi-count adjustment. Harlow recognizes that U.S.S.G § 2H1.1(a)(1) applies to both counts, but claims they should not group pursuant U.S.S.G § 2D1.2. *See* ECF No. 554 at 6. Harlow provides no legal basis to support her misguided assertion because she cannot—the rules leave no doubt that the multi-count adjustment applies here. *See* U.S.S.G § 2H1.1(a)(1) (proscribing a base offense level of 12 for offenses involving individual rights involving two or more participants), U.S.S.G § 3D1.2 at n.8 ("[A]pply the ordinary grouping rules to determine the combined offense level based upon the substantive counts of which the defendant is convicted and the various acts cited by the conspiracy count that would constitute behavior of a substantive nature."). Harlow may object to her

sentencing guidelines, but without any legal precedent to support her objections it is clear such objections are meritless. Harlow does not and cannot support her argument that the multi-count adjustment is unwarranted. The multi-count adjustment applies and Harlow's combined adjusted offense level of 20 is accurate.

## II.     Harlow should be Sentenced to a Term of Incarceration at the Low-end of her Applicable Sentencing Guidelines

In addition to her baseless objections to the PSR, Harlow makes several irrelevant and incredulous arguments to support her request for a variance and a term of home confinement pursuant to the Section 3553 factors. *See* ECF No. 554 at 8-18. Harlow's actions during the clinic invasion on October 22, 2020, which caused irreparable harm to the patients and staff at the clinic, and her downright refusal to acknowledge those criminal actions even in the face of overwhelming evidence, establish that a variance and a term of home confinement are insufficient to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2).

First, to support her request for a variance, Harlow maintains she is a "true pacifist" who has a "pacifist approach to the pro-life movement. *Id.* at 9. Harlow once again denies any responsibility for the violence she and her co-defendants inflicted upon clinic patients and staff during the invasion on October 22, 2020—as the evidence established, and this Court and two jury panels have found, the co-defendants' actions that day were violent. Additionally, as previously briefed, the nature and characteristics of Harlow's offenses indicate that she was committed to blocking access to reproductive health care on October 22, 2020, and was willing to do whatever was necessary to ensure the blockade was a success. *See* ECF No. 540 at 2-10. Harlow traveled from Massachusetts, provided transportation for three other co-defendants, pushed and shoved

clinic staff, used locks and chains, yelled out and harassed clinic staff and patients, and went limp to delay her removal. *See id.* at 8-10. It is incredulous for Harlow to maintain "that there was no evidence that she believed anything, but a peaceful red rescue was going to take place[,]" while simultaneously trying to convince this Court she knows she broke the law and is ready to accept the consequences of her actions. *See* ECF No. 554 at 9 (Harlow explaining she understands and subscribes to Judge Pillard's message when she stated that protestors know "I'm violating the law and I'm ready to take the consequences for it because I'm responding to a higher law"). Harlow's deliberate decision to invade the clinic by pushing and shoving clinic staff, wear a bike lock and chains to prolong her invasion for as long as possible, and subsequently lie and deny all responsibility for her crimes is exactly the reason a downward variance and a term of home confinement is insufficient to effectuate the purposes set forth in Section 3553.

Second, Harlow claims that the remaining Section 3553 factors, including her history and characteristics, the need for respect for the law and deterrence, and the need to avoid unwarranted sentencing disparities support a variance and a sentence of home confinement. *See* ECF No. 554 at 9-12. These arguments defy logic. Harlow had the support of her family when she invaded the clinic and attacked and harassed clinic staff and patients, but it did not stop her then. When Harlow cannot even acknowledge her criminal conduct and the harm she caused, it is unbelievable for her to assert that she will not engage in "disruptive pro-life protests" in the future. Harlow does not know what that means—the clinic invasion on October 22, 2020, was not just "disruptive." The invasion was violent and caused unnecessary and unwarranted harm. Harlow fails to demonstrate how a term of home confinement is even remotely close to sufficient given her complete disrespect for the law, *see* ECF No. 541 at 15-16, the need for general and specific deterrence, *see id.* at 16-

17, and the sentencing guidelines that clearly apply, *see id*. at 17-20.

## III.    A Downward Variance is Unwarranted

Finally, Harlow attempts to use her medical conditions to support her request for a variance and a term of home confinement. *See* ECF No. 554 at 12-16.   As previously briefed, these medical conditions did not deter or prevent Harlow from participating in criminal conduct, or from traveling to and from her vacation home in Canada on the eve of her original trial date. *See* ECF No. 540 at 14-15. Harlow cannot subsequently use her conditions as an excuse to avoid the necessary consequences of her actions. Notably, Harlow has not provided a single piece of evidence to suggest that the Bureau of Prisons ("BOP") is incapable of managing her care. Even the testimony of Harlow's doctor prior to her trial did not remotely indicate that Harlow's medical conditions requires any special level of care, let alone the type of care that BOP cannot provide.

The cases Harlow relies on, *see* ECF No. 554 at 14-16, similarly provide her with no relief. First, the non-binding precedent that Harlow cites—even if they were somehow binding on this Court—are distinguishable and unhelpful. For example, the District of Massachusetts departed from the sentencing guidelines in *Willis* following a two-day hearing, during which the defendant submitted numerous medical records of physicians and specialists confirming he suffered from 24 different medical conditions and needed to be constantly monitored and tested for many of those conditions. *See* 322 F.Supp.2d 76, 79-80 (D. Mass 2004). In *Maltese*, the Northern District of Illinois found that a downward departure was warranted because of the defendant's "extraordinary" physical impairment only after hearing from the patient's doctor about his poor prognosis, his risk of infection, and the harm of those infections. *See* No. 90 CR 87-19, 1993 WL 222350, at *10 (N.D. Ill. June 22, 1993) ("Given that defendant's prognosis is poor and that

statistics suggest that most liver cancer patients do not live one year despite postoperative therapy, this court finds that defendant's illness presents the requisite extraordinary physical impairment."). In *Watson*, the Eastern District of Pennsylvania considered not just the defendant's medical conditions, but also his mental health, cognitive limitations, and substance addiction—factors not indicated here—and did not sentence the defendant to home confinement, but rather 120 months imprisonment. *United States v. Watson*, 385 F. Supp. 2d 534, 540 (E.D. Pa. 2005). And finally, the *Ghannam* opinion also does not help Harlow, as the Fourth Circuit emphasized that U.S.S.G. § 5H1.4 "allows downward departures any time a sentencing court is presented with **sufficient evidence** of impairment." 899 F.2d 327, 329 (4th Cir. 1990). Importantly, in *Ghannam*, the defendant was challenging the Southern District of West Virginia's decision to sentence him to 48 months imprisonment, rather than home confinement—a decision the Fourth Circuit refused to upend. *Id.* These non-binding cases do not support the need for the below guidelines sentence that Harlow wants.[3] Harlow has not provided any evidence of extraordinary physical impairment, let alone any impairment that cannot be appropriately managed and treated by the BOP such as to warrant a term of home confinement.

Harlow fares no better with legal precedent within the District of Columbia. For example, in *Dyce*, the District of Columbia Circuit Court **vacated** the District Court's below guidelines sentence, finding the defendant's family responsibilities were not exceptional and a departure was unwarranted. 91 F.3d 1462, 1465-71 (D.C. 1996) ("[N]one of the other factors cited by the court

---

[3]     It is also important to note that in each of these cases to which Harlow cites, the defendant pled guilty and accepted responsibility for his actions. Harlow has done nothing but the contrary and continues to minimize her role in the clinic invasion by distorting facts and ignoring the evidence.

remove this case from the relevant 'heartland' that the Commission had taken into account in fashioning the Guidelines."). Furthermore, the Circuit Court noted, "we underscore what is implicit in the word 'extraordinary' and explicit in the Guidelines themselves: departures on such a basis should be rare." *Id*. at 1466. As another example, Harlow's reliance on *United States v. Smith*, 27 F.3d. 649, (D.C. 1994), is similarly unhelpful and irrelevant.   The District of Columbia Circuit Court expressed no opinion on whether a departure was warranted, but simply noted that the defendant's status as a deportable alien was a factor the district court could consider as a reason for a downward departure—a factor wholly irrelevant to the instant matter.[4] *See* 27 F.3d 649, 655-56 (D.C. Cir. 1994).

As Harlow has presented zero evidence of an "extraordinary physical impairment," her request for a variance is wholly unsupported. Harlow informs this Court that she has an appointment with her doctor on April 29, 2024, *see* ECF No. 554 at 13, but it is telling that Harlow has had over five months—more than enough time—to be evaluated by her doctors and has failed to do so. In fact, Harlow's own assertions indicate there is no such "extraordinary physical impairment." *See* ECF No. 525 at 18, ¶ 117 (Harlow explaining that she has difficulty walking, uses a wheelchair, and must lie down to relieve pressure.). In short, a downward variance and a sentence of home confinement defies all logic.

## IV.    Conclusion

For the reasons stated above and previously briefed, *see* ECF No. 540, a sentence at the low-end of the Guidelines will achieve a sentence that reflects the Section 3553 factors.   In

---

[4]    The government notes that in both of these opinions, the defendants, unlike Harlow, pled guilty and accepted responsibility for their actions.

particular, such a sentence reflects the gravity of the offense (to include vindicating the rights of those whom Harlow victimized), the need for deterrence, and the absence of any mitigating factors. This Court should sentence Harlow to a term of incarceration at the low-end of Harlow's applicable Sentencing Guidelines, which is 33-41 months at combined adjusted offense level 20 and criminal history category I.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052
*/s/ Rebecca G. Ross*
REBECCA G. ROSS
NY Bar No. 5590666
JOHN CRABB JR.
NY Bar No. 2367670
Assistant United States Attorneys
601 D Street, NW
Washington, DC 20001
john.d.crabb@usdoj.gov

KRISTEN CLARKE
ASSISTANT ATTORNEY GENERAL
CIVIL RIGHTS DIVISION
*/s/ Sanjay H. Patel*
SANJAY H. PATEL
IL Bar. No. 6272840
Trial Attorney
Criminal Section, Civil Rights Division
Email: Sanjay.Patel@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of this memorandum has been filed and served upon all parties listed on the Electronic Case Filing (ECF) System and is available for viewing and downloading from the ECF system.

<u>*/s/ Rebecca G. Ross*</u>
REBECCA G. ROSS
Assistant United States Attorney

12